IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

ROBERT R. RIGGIN, JR.,     :
            :
     Plaintiff,     :
            :
v.     :
     :   **No. 5:15-CV-205 (CAR)**
UNITED STATES OF AMERICA,     :
Department of the Air Force, AND     :
DEBORAH LEE JAMES, Secretary of     :
the Air Force,     :
            :
     Defendants.     :
_____ :

## ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Robert Riggin, Jr., brings this action for retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and age discrimination under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA").  Before the Court is Defendants The United States Department of the Air Force and Secretary of the Air Force Deborah Lee James' Motion for Summary Judgment.  Having read and considered the Motion, the record in this case, the applicable law, and the parties' arguments, the Court finds Plaintiff fails to raise genuine issues of material fact on either of his claims and therefore **GRANTS** Defendants' Motion for Summary Judgment [Doc. 18].

**LEGAL STANDARD**

Summary judgment is proper if the movant "shows that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law."[1]  Not all factual disputes render summary judgment inappropriate; only a genuine issue of material fact will defeat a properly supported motion for summary judgment.[2]  This means summary judgment may be granted if there is insufficient evidence for a reasonable factfinder to return a verdict for the nonmoving party or, in other words, if reasonable minds could not differ as to the verdict.[3]

On summary judgment, the Court must view the evidence and all justifiable inferences in the light most favorable to the nonmoving party; the Court may not make credibility determinations or weigh the evidence.[4]  The moving party "always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitle it to a judgment as a matter of law.[5]  If the moving party discharges this burden, the burden then shifts to the nonmoving party to respond by setting forth specific evidence in the record and articulating the precise manner in which that evidence creates a genuine

---

[1] Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).
[2] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).
[3] *See id.* at 249-52.
[4] *See id.* at 254-55; *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992).
[5] *Celotex*, 477 U.S. at 323 (internal quotation marks omitted).

issue of material fact or that the moving party is not entitled to a judgment as a matter of law.[6]  This evidence must consist of more than mere conclusory allegations or legal conclusions.[7]

## BACKGROUND

Plaintiff timely filed this action alleging Defendants unlawfully demoted him to a Human Resources position based on his age and in retaliation for helping another employee file an Equal Employment Opportunity ("EEO") complaint.  Defendants, however, contend they merely transferred Plaintiff to an equivalent supervisor position based on his discrimination against another employee, his unsatisfactory performance, and the needs of the organization.  The facts, taken in the light most favorable to Plaintiff as the nonmoving party, are as follows:

Plaintiff, a 60-year-old male, worked for 20 years as an aircraft overhaul supervisor in the Production Flight at Robins Air Force Base in Warner Robins, Georgia. As a Production Flight supervisor, Plaintiff supervised approximately 30 mechanics in the production and repair of aircraft.  Because management typically transferred supervisors to the Production Flight after one year in the Human Resources Flight, a Production Flight supervisor was considered a more prestigious position than a Human Resources Flight supervisor.[8]

---

[6] *See* Fed. R. Civ. P. 56(e); *see also Celotex,* 477 U.S. at 324-26.

[7] *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991).

[8] Pl. Depo., pp. 24, 28-29 [Doc. 20].

In 2011, several incidents occurred that the parties contend led to Plaintiff's alleged demotion to the Human Resources Flight.  First, in the early summer of 2011, Plaintiff reviewed co-worker Craig Whitaker's "career brief"—the official employment transcript setting forth Whitaker's work history—and discovered Whitaker had not received credit for certain work performed.[9]  Plaintiff had been mentoring Whitaker, who wanted to become a supervisor.  To help Whitaker receive credit, Plaintiff told him how to document the work and advised him of relevant Office of Personnel Management regulations.[10]  Management, however, refused to give Whitaker credit for the work, and thus Whitaker filed an EEO complaint alleging discrimination.  Although the record is unclear as to what type of discrimination Whitaker alleged and to what extent Plaintiff participated in the filing of Whitaker's EEO complaint, the record contains evidence Plaintiff's supervisors disapproved of his association with Whitaker.[11]  In September, Flight Chief Gerald Garrett accused Plaintiff of talking to Whitaker too much and told him Whitaker was "throwing [him] under the bus."[12]  In November,

---

[9] *Id.* at p. 56 (noting Whitaker filed his EEO claim in "early summer" of 2011).

[10] Pl. declaration, p. 10 [Doc. 18-9, p. 4].

[11] Pl. Depo., pp. 5-8 [Doc. 20]. The record contains some indication Whitaker alleged disability discrimination. [Doc. 18-9, p. 16]. It is unclear when Whitaker filed his EEO complaint: Plaintiff alleges Whitaker filed it in the summer of 2011, but Defendants' evidence suggests he filed the complaint in January 2011, and it was closed in April 2011, for failure to pursue. *See* Pl. Depo, p. 61 [Doc. 20]; [Doc. 18-7, p. 21].

[12] Pl. Depo, p. 61 [Doc. 20]; [Doc. 18-9, p. 17].

another employee told Plaintiff, "Mr. Garrett and others in . . . management are after you because of [] Whitaker's EEO case."[13]

Second, in August of 2011, one of Plaintiff's supervisees, David Wynn, filed an EEO complaint alleging Plaintiff discriminated against him based on his race and physical limitations.[14] Garrett conducted an internal investigation, substantiated Wynn's allegations, and admonished Plaintiff.[15]

In addition, Defendants believed Plaintiff's performance began to decline around this time. Garrett observed that six of Plaintiff's vocational students occasionally had no work to do and concluded Plaintiff inactively supervised his Flight.[16] Plaintiff, however, did not receive a mandatory performance evaluation in October 2011 and thus was not alerted to his unsatisfactory performance at that time.[17]

Finally, during 2011, the Human Resources Flight had several vacancies. According to the Human Resources Flight Manager ("HR Manager"), "a big turnover of first-level supervisors occurred between 2010 and 2011."[18] The HR Manager needed an experienced supervisor so she could perform her job duties.[19] Thus, the HR Manager

---

[13] [Doc. 18-3, p. 99]. The Court recognizes this statement is hearsay, which a district court may consider in ruling on a motion for summary judgment if the statement could be "reduced to admissible evidence at trial." *Macuba v. Deboer*, 193 F.3d 1316, 1323 (11th Cir. 1999). The Court will consider this statement because Plaintiff's co-worker could testify at trial. *Id.* at 1323-24 (noting such a statement "might be admissible because it . . . does not constitute hearsay").

[14] Pl. Depo, pp. 56-58 [Doc. 20].

[15] Garrett declaration, p. 5 [Doc. 18-9, p. 47]; Pl. Depo., pp. 57-58 [Doc. 20].

[16] Pl. Depo., p. 59 [Doc. 20].

[17] *Id.* at pp. 43-46; Garrett declaration, pp. 3-4 [Doc. 18-9, p. 45-46].

[18] Benboe declaration, p. 6 [Doc. 18-9, p. 70].

[19] *Id.*

and Garrett agreed to an exchange of personnel whereby Plaintiff would go to the Human Resources Flight and Tommy Veator, 40, would go to the Production Flight.[20] The record is unclear as to when Garrett and the HR Manager made this agreement, but it occurred after Plaintiff allegedly discriminated against Wynn in August of 2011.[21]

On January 4, 2012, Garrett transferred Plaintiff to the Human Resources Flight. Garrett told Plaintiff he inactively supervised his Flight, leaked privileged information to his supervisees, and "walk[ed] the line" between management and the work force.[22] Thus, Garrett believed Plaintiff needed a "change of atmosphere."[23]  Although Plaintiff told Garrett he did not want to be transferred, Garrett insisted.

By the end of January, Plaintiff began working as a supervisor in the Human Resources Flight.  Although his title, compensation, series, and grade remained the same, Plaintiff felt humiliated as a result of what he deemed a demotion.[24]  His duties as a Human Resources Flight supervisor required him to supervise 140 employees instead of only 30, and rather than assembling aircraft, Plaintiff was required to perform administrative tasks, such as making appointments and documenting work injuries.[25] Moreover, Plaintiff was required to work part of the day shift and part of the swing

---

[20] Garrett declaration, p. 5 [Doc. 18-9, p. 47].
[21] *Id.*
[22] Pl. Depo., pp. 24, 59 [Doc. 20]; [Doc. 18-3] at 110.
[23] Pl. Depo., p. 24 [Doc. 20].
[24] *Id.* at pp. 54-55; Garrett declaration, p. 8 [Doc. 18-9, p. 50]. The Government categorizes its employees by series and grade. *Id.*
[25] Pl. Depo., p. 28 [Doc. 20]; Pl. declaration, p. 2 [Doc. 18-9, p. 2].

shift, instead of just the day shift as Production Flight supervisor.[26]  Finally, Plaintiff had to walk an additional three-eighths of a mile from his desk to his new workstation because his supervisors did not provide a new desk and withdrew his preferential parking pass.[27]

On March 7, 2012, Plaintiff filed an EEO complaint alleging Defendants unlawfully demoted him due to his age and in retaliation for helping Whitaker file his EEO complaint.  Three years later, the Department of the Air Force issued a Final Agency Decision finding no discrimination, and Plaintiff timely filed this action on June 1, 2015.[28]  Defendants bring the current Motion seeking summary judgment on Plaintiff's claims.

## DISCUSSION

### I.    Retaliation Claim

Plaintiff first claims Defendants unlawfully demoted him from the Production Flight to the Human Resources Flight in retaliation for assisting with Craig Whitaker's EEO complaint.[29]  Where, as here, a plaintiff relies on circumstantial evidence to prove retaliation under Title VII, courts apply the burden-shifting approach articulated in

---

[26] Pl. Depo., p. 26 [Doc. 20]. The swing shift lasted from 3:30 PM until midnight. Benboe declaration, p. 7 [Doc. 18-9, p. 71].

[27] Pl. Depo., pp. 26, 29-30, 38 [Doc. 20]. *See also* Roberts declaration, p. 3 [Doc. 18-9, p. 77]

[28] Final Agency Decision [Doc. 18-3, pp. 39-51].

[29] Plaintiff brought suit under 5 U.S.C. § 2301 *et seq.*, which sets forth merit system principles for federal personnel. Complaint [Doc. 1, p. 5]. In his Response to Defendants' Motion for Summary Judgment, however, Plaintiff instead argues Defendants violated Title VII. Pl. Response [Doc. 24-1, pp. 4-5]. Hence, the Court will address Plaintiff's claim under Title VII.

*McDonnell Douglas Corp. v. Green.*[30]  Under this approach, a plaintiff must first establish a *prima facie* case of retaliation by showing (1) he engaged in statutorily protected activity, (2) he suffered a materially adverse action, and (3) there is a causal relation between the two events.[31]  If the plaintiff does so, the employer then must articulate a legitimate, non-retaliatory reason for the challenged employment action as an affirmative defense to liability.[32]  The plaintiff bears the ultimate burden of proving retaliation by a preponderance of the evidence and establishing the reason provided by the employer is a pretext for prohibited retaliatory conduct.[33]  Moreover, the employee must ultimately prove "the desire to retaliate was the but-for cause of the challenged employment action."[34]

Construing the evidence in Plaintiff's favor, the Court will assume, without deciding, Plaintiff can establish a *prima facie* case; that is, (1) Plaintiff engaged in a protected activity by helping prepare Whitaker's EEO complaint; (2) Plaintiff's transfer was a demotion and therefore constituted an adverse action; and (3) the two events are causally related.[35]

---

[30] 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973). *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1181 (11th Cir. 2010).

[31] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802. (1973); *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008).

[32] *Goldsmith,* 513 F.3d at 1277.

[33] *Id.*

[34] *Booth v. Pasco Cnty., Fla.*, 757 F.3d 1198, 1207 (11th Cir. 2014) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, —U.S.—, 133 S. Ct. 2517, 2528, 186 L.Ed.2d 503 (2013)).

[35] The Court presumes Plaintiff engaged in a protected activity despite the absence of any evidence in the record concerning the nature of Whitaker's EEO complaint, *see* 42 U.S.C. § 2000e-2(a) (prohibiting

Even assuming Plaintiff can establish a *prima facie* case, however, he cannot establish but-for causation or pretext.  To establish but-for causation, Plaintiff must prove "the desire to retaliate was the 'but-for' cause of [his demotion]."[36]  Here, Plaintiff relies on the temporal proximity between Whitaker filing his EEO complaint with Plaintiff's assistance and Plaintiff's demotion to establish but-for causation.[37]  To satisfy but-for causation based on temporal proximity, Plaintiff must prove the time between the filing of Whitaker's EEO complaint and Plaintiff's demotion is "very close."[38]  Plaintiff cannot do so.  Whitaker filed his EEO complaint in the "early summer" of 2011; Plaintiff's demotion occurred on January 4, 2012.[39]  Even assuming "early summer" means June or July, Plaintiff's demotion occurred six to seven months later.  In the Eleventh Circuit, a delay of even three to four months is not "very close"; thus a delay of six to seven months certainly does not satisfy the standard.[40]  The Court is unpersuaded by Plaintiff's contention that Garrett's statements in September of 2011 satisfy the "very close" standard.  A supervisor's statements do not constitute an

---

discrimination on the basis of race, color, religion, sex, or national origin), or the extent to which Plaintiff assisted Whitaker in filing his EEO complaint.

[36] *Nassar*, 133 S. Ct. at 2528.

[37] Again, the Court assumes for purposes of summary judgment only that Plaintiff both assisted Whitaker and that such assistance was a statutorily protected activity.

[38] *See Raspanti v. Four Amigos Travel, Inc.*, 266 F. App'x 820, 823 (11th Cir. 2008) (unpublished decision) (citing *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007).

[39] Pl. Depo, pp. 25, 56 [Doc. 20].

[40] *Id.*

adverse employment action.[41]   Thus, Plaintiff cannot meet his burden of showing a "very close" temporal proximity to establish but-for causation.

Moreover, Plaintiff cannot establish pretext.   Defendants give three legitimate, non-retaliatory reasons for demoting Plaintiff: (1) Plaintiff's discrimination against his supervisee David Wynn; (2) Plaintiff's unsatisfactory performance in the Production Flight; and (3) Defendants' need to fill vacancies in the Human Resources Flight with experienced supervisors.[42]   Thus, Defendants have met their "exceedingly light" burden.[43]

To establish pretext, Plaintiff must demonstrate Defendants' proffered reasons were not the real reasons for his demotion.[44]   In other words, Plaintiff must "cast sufficient doubt on the defendant's proffered [non-retaliatory] reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct."[45]   Plaintiff may do so "either directly by persuading the court that a retaliatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of

---

[41] *See Harris v. Fla. Agency for Health Care Admin.*, 611 F. App'x 949, 952 (11th Cir. 2015) (unpublished decision) (noting "[a] supervisor's statement that the plaintiff failed to perform his job duties sufficiently does not constitute an adverse employment action when nothing . . . indicates that the plaintiff was disciplined").

[42] Garrett declaration, pp. 5-6, [Doc. 18-9, pp. 47-48]; Pryor declaration, p. 6 [Doc. 18-9; p. 61].

[43] *Holifield v. Reno*, 115 F.3d 1555, 1564 (11th Cir. 1997).

[44] *Jackson v. Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005).

[45] *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997) (internal quotations omitted).

credence."[46]  Under the latter approach, Plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence."[47]  Plaintiff cannot meet this burden.

Plaintiff contends each of Defendants' three reasons for the demotion is unworthy of credence.  First, Plaintiff argues the record is devoid of any evidence he discriminated against Wynn.  The inquiry into pretext, however, "centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside of the decision maker's head."[48]  Accordingly, "where the employer produces . . . documentary evidence of misconduct," the employee's "assertions of his own good performance are insufficient to defeat summary judgment."[49]  Here, Garrett documented Wynn's allegations against Plaintiff in a memo dated August 9, 2011, and he substantiated the allegations in an internal investigation.[50]

Second, Plaintiff argues his supervisors did not honestly believe his performance was unsatisfactory because he never received a performance evaluation in October 2011.  This argument, however, misses the mark.  The fact Plaintiff's supervisors waited until his demotion to inform him of his unsatisfactory performance has no relevance to

---

[46] *Id.*

[47] *Jackson*, 405 F.3d at 1289; *Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1258 (11th Cir. 2001).

[48] *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010).

[49] *Holifield*, 115 F.3d at 1565.

[50] Garrett Memo [Doc. 18-9, pp. 53-54]; Garrett declaration, p. 5 [Doc. 18-9, p. 47]; Pl. Depo., pp. 57-58 [Doc. 20].

11

whether they believed his performance was unsatisfactory.[51]  Indeed, Plaintiff admits he was responsible for at least six vocational students who occasionally had no work to do.[52]  Thus, Plaintiff's own testimony supports his supervisors' conclusion he was an inactive supervisor.  Moreover, multiple supervisors did not receive performance evaluations in 2011, undermining Plaintiff's claim he was singled out for retaliation.[53]  Accordingly, Plaintiff fails to establish his supervisors did not honestly believe his performance was unsatisfactory.

Third, Plaintiff contends his demotion violated customary procedures for filling vacancies.  Although Plaintiff admits no standard process or procedure governs the transfer of a supervisor, he relies on a 1995 memorandum setting forth the transfer procedures for unionized employees.[54]  As a supervisor, however, Plaintiff was not a member of the labor union, and therefore these procedures did not apply to him.[55]  Moreover, the record amply demonstrates a shortage of supervisors in the Human Resources Flight.[56]  Indeed, Plaintiff acknowledges two supervisors left the Human Resources Flight before his demotion, creating two vacancies.[57]  Plaintiff does not

---

[51] *See Wheatfall v. Bd. of Regents of Univ. System of Ga*, 9 F. Supp. 3d 1342, 1363 (N.D. Ga. 2014) (explaining although employer delayed terminating employee, employee's "argument amounts to little more than quarreling with the correctness and timing of [employer's] decision to fire her").

[52] Pl. Depo, pp. 24, 59 [Doc. 20].

[53] *Id.* at p. 43-45 (explaining sometimes the Deputy Branch Chief completed the midterms, and sometimes he did not); Pryor declaration, pp. 4-5 [Doc. 18-9, pp. 59-60].

[54] Pl. Response [Doc. 24-1, p. 10]; Reassignment Memorandum [Doc. 18-4, p. 28].

[55] Pl. Depo., pp. 21-22 [Doc. 20]; Garrett declaration, p. 8 [Doc. 18-9, p. 50].

[56] Garrett declaration, p. 7 [Doc. 18-9, p. 49]; Pryor declaration, p. 6 [Doc. 18-9, p. 61]; Benboe declaration, p. 6 [Doc. 18-9, p. 70].

[57] Pl. Depo., pp. 27-28 [Doc. 20].

dispute the fact the HR Manager needed experienced supervisors in the Human Resources Flight, and Plaintiff had decades of experience.[58]  Thus, Plaintiff fails to show Garrett did not transfer him to fill these vacancies.   Accordingly, Plaintiff cannot establish Defendants' three legitimate reasons for his demotion are pretextual, and Defendants are entitled to judgment as a matter of law on Plaintiff's retaliation claim.

## II.      Age Discrimination Claim

Plaintiff also originally alleged Defendants violated the ADEA by demoting him from the Production Flight to the Human Resources Flight based on his age. Plaintiff, however, has abandoned this claim.  "[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned."[59]   In response to Defendants' Motion for Summary Judgment, Plaintiff makes no argument, cites no legal authority, and identifies no issues of material fact concerning his age discrimination claim.  Indeed, Plaintiff refers to the retaliation claim as "the remaining action."[60]  Thus, Defendants are entitled to judgment as a matter of law on Plaintiff's age discrimination claim.

## CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment [Doc. 18] is **GRANTED**.

---

[58] Benboe declaration, p. 6 [Doc. 18-9, p. 70].

[59] *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). *See also Brackin v. Anson*, 585 F. App'x 991, 994 (11th Cir. 2014) (noting abandonment occurs when a party makes no argument and cites to no legal authority).

[60] [Doc. 24-1] at 4.

**SO ORDERED,** this 17th day of March, 2017.

S/  C. Ashley Royal
C. ASHLEY ROYAL, SENIOR JUDGE
UNITED STATES DISTRICT COURT